### KNAUTH *v.* UNITED STATES (No. 116).[1]

1. SAMPLES.

   The official sample of the goods made the subject of controversy being selected by a customs officer charged with the duty of making a selection it will be presumed the sample so chosen is fairly representative of the merchandise.

2. JACQUARD FIGURED GOODS.

   The sample exhibited showed the merchandise to have been Jacquard figured goods, in the piece, made of silk and cotton, silk being the component of chief value, two colors in the filling and the fabric dyed in the yarn; it was dutiable under paragraph 391, tariff act of 1897.

United States Court of Customs Appeals, January 11, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 21021 (T. D. 29690).

[Reversed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*John A. Kemp* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

In this case certain goods imported by the appellants were returned by the customs appraiser at New York as woven fabrics in the piece, composed of silk and cotton, *piece dyed,* and weighing between 1⅓ and 8 ounces per square yard, silk being the component material of chief

---

[1] Reported in T. D. 31216 (20 Treas. Dec., 97).

value and constituting over 45 per cent of the weight. As fabrics of the class reported are made dutiable at $3 per pound under paragraph 387 of the tariff act of 1897, the collector assessed the goods so returned at that rate. The importers protested against the decision of the collector, and among other reasons for their objection thereto set up the claim that the merchandise was dutiable under paragraph 391 of said act, which fixes a duty of 50 per cent ad valorem on—

\* \* \* all Jacquard figured goods in the piece, made on looms, of which silk is the component material of chief value, dyed in the yarn, and containing two or more colors in the filling \* \* \*.

The Board of General Appraisers sustained the collector, and from its decision an appeal was taken to the United States Circuit Court for the Southern District of New York, which appeal, in accordance with the provisions of the tariff act of August 5, 1909, has been certified to this court for determination.

. On the hearing before the board it was not disputed that the goods were Jacquard figured goods in the piece; that they were made of silk and cotton; that they were woven on Jacquard looms; and that silk was the component material of chief value. This left the number of the colors in the filling and the question of whether the fabric was dyed in the piece or dyed in the yarn as the only subjects of controversy between the importers and the Government.

The official sample of the goods is a silk fabric, the main body of which is dead white, relieved by small hexagonal figures outlined in glossy white thread and by white satiny stripes running with the warp. Crossing the width of the goods from selvage to selvage is a red stripe made of red cotton threads, which are the filling threads of that portion of the fabric covered by the stripe. So far as the *sample itself* is concerned, there can be no question but what there are two colors in the "filling." The report of the appraiser declared that the fabric was *piece dyed*, but contained no statement as to the number of colors in the filling. The Government contended, first, that the red stripe of the sample was found only at the end of the piece, that it was not repeated at intervals throughout the fabric, and that therefore the merchandise did not meet the requirement of two colors in the filling; second, that the special report of the appraiser to the effect that the goods were *piece dyed* was uncontradicted, and that therefore the goods must be held to be dyed in the piece and not in the yarn.

The Government attempted to show by two customs examiners that the red stripe appeared only at the end of the goods and was not repeated in the fabric, but failed, as one of the witnesses had no remembrance whatever of the goods and the other had seen nothing more than the sample. Counsel for the importers argued, first, that

as the official sample contained a red stripe woven from selvage to selvage, and therefore had two colors in the filling, it must be assumed that that condition was characteristic of the fabric; second, that the appraiser's special report stating that the goods were dyed in the piece was contradicted by the official sample, which showed conclusively that the fabric was dyed in the yarn and could not possibly have been dyed in the piece. The board held that the sample was too small to enable it to determine whether the red stripe repeated itself in the rest of the piece, and that as the burden was on the importers to show that the report of the appraiser was incorrect, it must find that the goods did not contain two colors in the filling, and that the fabric was dyed in the piece and not in the yarn, We can not sustain the findings of the board.

The report of the appraiser did not state that the red stripe was found only at the end of the piece or that it did not repeat itself. Neither did it make any mention whatever as to the number of colors in the filling. In fact, the examiner who furnished the appraiser with the data for his report had nothing before him except the sample, and with that under his eyes and with no information as to the rest of the piece he could not very well have informed his superiors that the stripe did not repeat itself or that there were not two colors in the filling. The appraiser was bound by the regulations to describe the merchandise in such terms as would enable the collector to properly classify it, and it was his especial duty not to omit from his report any factor which might justify the classification of the goods at a higher rather than a lower rate. If, therefore, any presumption attaches to the silence of the report as to the red stripe and the number of colors in the filling, it must be the presumption that the appraiser believed the red stripe to be characteristic of the goods and that he was not justified in reporting that the weft of the fabric was a monotint. Moreover, the official sample was taken by customs officers charged with the duty of properly selecting samples *fairly representative* of the merchandise, and it must be presumed that they met their obligation in that behalf and that the sample taken by them fairly represents the goods of which it once formed an integral part.

As there are two colors in the filling of the sample, it follows, in the absence of evidence to the contrary, that it must be assumed that that condition was characteristic and fairly representative of the rest of the goods. Counsel for the appellant claims that, independent of its location and of whether or not it repeated itself, the red stripe, being a part of the filling, met the statutory requirement of two colors in the filling. We do not go that far. A single stripe of a different color from the body of the fabric placed at the end of the warp and crossing the fabric from selvage to selvage would hardly

bring the merchandise within the color requirements of paragraph 391. The colors in the filling contemplated by the statute must be something more than mere incidental, immaterial parts of the completed article. Such colors must be permanent, substantial, characteristic features of the merchandise and designed to continue among its substantial, characteristic features when thrown into consumption and used by the consumer.

The report of the appraiser was some evidence that the goods were *piece dyed.* That evidence, however, is rebuttable—evidence, in other words, which may be combated and overcome by other competent evidence. In our opinion, it was completely rebutted in this case by the official sample, which was not only presumptively but affirmatively shown to be a true sample and to correctly represent the goods from which it was taken. An inspection of the sample shows beyond discussion that the color effects were not and could not have been produced after weaving, but were in the yarn before it was woven into the fabric. That condition existing in the sample, it must be presumed to have been characteristic of the rest of the goods, for the reasons already stated.

The decision of the Board of General Appraisers is *reversed.*